NICOL v. AMES, Marshal.

(Circuit Court, N. D. Illinois, N. D. September 28, 1898.)

1. INTERNAL REVENUE ACT OF 1898—CONSTITUTIONALITY—SALES ON BOARD OF TRADE.

That provision of the internal revenue act of 1898 (Schedule A, par. 2), imposing a tax "upon each sale, agreement of sale, or agreement to sell, any products or merchandise at any exchange, or board of trade, or other similar place," and requiring, upon the making of any such sale or agreement, the delivery by the seller to the buyer of a written bill or memorandum, to which shall be affixed stamps in value equal to the amount of the tax, while levying an excise tax, within the meaning of Const. art. 1, § 8, is not in violation of the requirement of such section that the tax shall be "uniform throughout the United States." The tax, being limited to sales made at an exchange, board of trade, or similar place, is, in effect, a tax upon the privilege of selling at such places, graduated according to the use made of such privilege, and not upon either the document required, the product sold, or the occupation, aside from such privilege, and is hence uniform.

2. SAME—METHOD OF COLLECTION.

The method provided for the collection of such tax, by requiring the delivery by the seller of a stamped memorandum of the sale or contract, is not unconstitutional, or beyond the powers of congress, as rendering unlawful an oral contract recognized as valid by the laws of the state; the failure to make or stamp the memorandum, which has no other function than to identify the exercise of the privilege taxed and to receive the stamp, being punishable by fine or imprisonment, and there being no provision that such failure shall in any way affect the validity of the contract. Nor is such method invalid because no action for the collection of the tax is provided for.

Petition for Writ of Habeas Corpus.

Henry S. Robbins, for petitioner.
John C. Black, U. S. Dist. Atty., for respondent.

SHOWALTER, Circuit Judge. The first paragraph of section 6 of the revenue law of 1898 reads:

"Sec. 6. That on and after the first day of July, eighteen hundred and ninety-eight, there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters and things mentioned and described in Schedule A of this act, or for or in respect of the vellum, parchment or paper upon which such instruments, matters, or things, or any of them, shall be written or printed by any person or persons, or party, who shall make, sign, or issue the same, or for whose use or benefit the same shall be made, signed, or issued, the several taxes or sums of money set down in figures against the same, respectively, or otherwise specified or set forth in the said schedule."

Of the Schedule A of the act the second paragraph reads:

"Upon each sale, agreement of sale, or agreement to sell, any products or merchandise at any exchange, or board of trade, or other similar place, either for present or future delivery, for each one hundred dollars in value of said sale, or agreement of sale, or agreement to sell, one cent, and for each additional one hundred dollars or fractional part thereof in excess of one hundred dollars, one cent: provided, that on every sale or agreement of sale, or agreement to sell, as aforesaid, there shall be made and delivered by the seller to the buyer a bill, memorandum, agreement, or other evidence of such sale, agreement of sale, or agreement to sell, to which there shall be affixed a lawful stamp or stamps, in value equal to the amount of the tax on such sale. And every such bill, memorandum, or other evidence of sale or agreement to sell shall show the date thereof, the name of the seller, the amount of the sale, and the matter or thing to which it refers; and any person or persons liable to pay the tax as herein provided, or any one who acts in the matter as agent or broker for such person or persons, who shall make any such sale or agreement of sale, or agreement to sell, or who shall, in pursuance of any such sale, or agreement of sale, or agreement to sell, deliver any such products or merchandise without a bill, memorandum, or other evidence thereof, as herein required, or who shall deliver such bill, memorandum, or other evidence of sale, or agreement to sell, without having the proper stamps affixed thereto, with intent to evade the foregoing provisions, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall pay a fine of not less than five hundred nor more than one thousand dollars, or be imprisoned not more than six months, or both, at the discretion of the court."

The petitioner, James Nicol, who is a citizen of Illinois, and resides in Chicago, is a member of the commercial exchange known as the "Board of Trade of the City of Chicago." On the 2d day of September, 1898, in the course of his business on said board of trade, Mr. Nicol, by oral contract, sold, for immediate delivery at the city of Chicago, to one James H. Milne, also a member of the said board of trade and a citizen of the state of Illinois, two carloads of oats, being 2,289 bushels of oats, then in Chicago, at the price of 20¾ cents per bushel, and for the total sum of $474.98. Thereafter, and on the 8th day of September, 1898, the attorney of the United States for the Northern district of Illinois filed an information in the district court of the United States for said district, reciting said sale, and reciting, also, that said petitioner had made the sale without making and delivering to the buyer any bill, memorandum, agreement, or other evidence of said sale showing the date thereof, the name of the seller, the amount of the sale, and the matter or thing to which it referred, as required by the statute last above quoted. Proceedings were afterwards had

in said court pursuant to said information, resulting in the conviction of said Nicol, and the imposition upon him of a fine of $500. Refusing to pay such fine, and being in custody, he filed his petition in this court for a writ of habeas corpus, and he is brought here by the marshal in response to said writ. He insists that the statute of the United States upon which he was convicted, being that above quoted, is in violation of the national constitution, that his detention is therefore unlawful, and that he should be discharged from the same.

A tax on a sale may mean a revenue charge or imposition by the government on the liberty of alienation in general, or on the liberty of making a sale under special and exceptional conditions. The statute provides that there shall be paid as a tax "upon each sale, agreement of sale, or agreement to sell, any products or merchandise at any exchange, or board of trade, or other similar place, * * * for each one hundred dollars in value of said sale, or agreement of sale, or agreement to sell, one cent, and for each additional one hundred dollars or fractional part thereof in excess of one hundred dollars, one cent." The sale referred to in this statute, being a sale of products or merchandise, must be made on an "exchange or board of trade," or at "a similar place," and the seller operating for the time being at such place or market must pay the tax. Dominion over the means of making a transfer or sale on a market which is known and established, and provided with special safeguards, and in a sense exclusive, rather than dominion over the thing sold, for the mere purpose of alienation in general, is the subject-matter of the tax. The privilege of selling upon an exchange or board of trade may be thought of as distinct from the product or merchandise there sold, or from a sale, merely as a sale, there made. This privilege is itself a property or thing of value, and it is upon the privilege of selling "at any exchange or board of trade," whenever such privilege is made use of, and not upon the sale apart from the privilege, or upon the occupation or business of selling apart from the privilege, or upon the product sold, or upon the price received for it, that the tax is levied. This tax is paid by means of a stamp or stamps put on a written document required by the law to identify each transaction and to receive said stamp or stamps. The document is merely an instrumentality for collecting the tax. The tax, as said, is not, in reality and legal effect, upon the document, or upon the commodity sold, or upon the sale per se, or upon the occupation of selling, but upon the privilege of selling products or merchandise at an exchange or upon a board of trade; for, apart from this privilege, there is, in the particular law here complained of, no tax.

The privilege in question is taxed according to the use made of it; the tax is graduated in proportion to the magnitude of the deal or operation. On every occasion when the privilege is used the owner thereof, himself conducting the sale, pays the tax. If he sell for some one not a member of the exchange or board of trade, he will still pay the tax, even though he collect the amount, or some portion of it, from his patron as a charge incidental to the service rendered; for, while the privilege taxed is his own property, the patron or employer enjoys to some extent the benefit resulting from the use of the privi-

lege. But this tax amounts in reality to an expense in transferring commodities from the producer to the ultimate consumer. The latter, in the last analysis, foots the bill. The tax is absorbed in the ultimate cost, and the consumer eventually pays it. Therefore this tax, being a case of what may be called indirect taxation, is, as contended by petitioner, subject to the constitutional limitation of uniformity "throughout the United States." But this tax, in my judgment, falls within the rule of uniformity. That rule is met if a tax operates equally upon the specified subject-matter wherever and whenever found throughout the United States. It is for the lawmaking power to determine the incidence of taxation,—that is, upon what matters the tax shall be levied,—as well as to provide the means or instrumentalities whereby the tax shall be collected. The tax in question applies whenever and wherever throughout the United States the privilege of selling products or merchandise on an exchange or board of trade, or similar place, is exercised, and it is graduated, as said, according to the use made of the privilege. That such a privilege is taxable seems to me plainly the teaching of the text-books on taxation, nor do I understand that this proposition is or will be disputed by the learned counsel for this petitioner.

The point is urged that the method of collecting this tax is unconstitutional, and in excess of the power of the national legislature, the reason given being that the law of the state on a matter within the exclusive cognizance of the state is violated; that is to say, the enactment complained of makes unlawful, it is said, an oral contract made in the course of intrastate, as distinguished from interstate, commerce. The offense for which this petitioner was fined was the neglect to make the memorandum specified in the statute. The sale of the oats by him was oral. He made no note or memorandum as required. But the act does not expressly declare that the oral contract in such case shall be deemed unlawful and void. Nor is it a question here whether this result follows as a legal consequence from what is declared. If, as is contended, congress has not the power to make void the oral contract, then that contract is valid. Voidness or illegality in the oral contract itself is in that case no part of the penalty, but the fine for neglecting to make the note or memorandum remains. On this understanding, the state law is not interfered with. The rights and liabilities of the parties, by virtue of the oral contract, remain, from the standpoint of the state law, precisely what they would have been if this national revenue enactment had not been made. On the other hand, if the power to make the oral contract void be in congress, then the proposition that the oral contract is void as the necessary legal consequence of the neglect to make a written memorandum as required in this law, would mean that said requirement is constitutional and valid.

The question here is not whether congress had the power to make the oral contract void, but whether, as a means or instrumentality for the collection of a valid tax, that body could, under penalty of a fine, require the seller to identify the transaction by making a note of it, and to pay the tax by stamping the note so made. The note indicated in the enactment calls for no details of the contract. The

note, apparently, need not be subscribed.    It need not show the name of the buyer, or the time or times of payment, nor need it contain covenants of any kind, or recitals, beyond a date, a name, "the amount of the sale, and the matter or thing to which it refers."    Nor, apart from the interest which the government may have in enforcing the penalty for violating the revenue law, is the note necessarily subject to the inspection of any person other than the seller who makes and stamps it, and the buyer to whom it is delivered.    The writing required is merely such a transient memorial as will meet the purposes of the revenue.    If, on the occasion of each sale made in the exercise of the privilege of selling on an exchange or board of trade, the seller will make, duly stamp, and deliver to the buyer this memorial, then the portion of the national revenue provided for in this law will be collected, and no results beyond this, hurtful or otherwise, will necessarily follow.    The memorandum, since it merely identifies the use of the privilege taxed, and receives the stamp which pays the tax, would seem to be appropriate as a means or instrumentality for collecting the tax.    Whether entirely adequate or not, the means proposed, including the fine for not making or stamping the memorandum, are not invalid, nor is the tax itself invalid, simply because no other means, such as suit or action of some sort by some revenue officer beyond the mere sale of stamps, were provided.

Section 8 of article 1 of the national constitution is an enumeration of powers vested in the congress of the United States.    The first in the list is the power "to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts, and excises shall be uniform throughout the United States."    The tax here in question is obviously not a direct tax, to be apportioned among the states, within the sense of paragraph 3 of section 2, or paragraph 4 of section 9, of said article 1.    Aside from the words, "to pay the debts and provide for the common defense and general welfare of the United States," upon which no point is made in the argument, the rule of uniformity is the only limitation upon the power of congress to levy this tax.

Counsel argues that this is in reality a tax on documents; that the memorandum called for in this act touching a sale on a board of trade, or an exchange, cannot be different in classification from such a memorandum touching a sale made elsewhere; and upon this ground he contends that the rule of uniformity is violated.    He says, moreover, that petitioner was fined, not for failing to affix a stamp to a document already extant, but for refusing to make the document; and, besides the rule of uniformity, he appeals to another rule, namely, that a tax can be levied only upon existing subjects, and that congress cannot make it obligatory on the taxpayer to create or produce subjects merely that they may be taxed.    But I do not concur with him in the view that this is a tax on documents. The document is made in order that it may receive the stamp, but the stamp does not pay a tax on the document.    The document is merely the convenient instrumentality whereby the tax may be collected.    After the enumeration in section 8, successively, of various powers vested in the congress of the United States, there

follows this power: "To make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof." Upon levying this tax, it was for congress to select the means which that body deemed "necessary and proper" for collecting the same. Even if, in some enactment for carrying into effect a power clearly given by the constitution of the United States, congress should ignore or annul an existing state law, this would not make such enactment invalid, provided the means proposed therein were "necessary and proper," as recited in the constitutional provision last above quoted. But the particular statute here in question, and upon which this petitioner was convicted, does not, as explained above, necessarily interfere with any state law. Defining the words "necessary and proper," Chief Justice Marshall in McCullough v. Maryland, 4 Wheat. 316, 420, 421, said:

"We admit, as all must admit, that the powers of the government are limited, and that its limits are not to be transcended. But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers which it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional."

I think the tax here in question is not in violation of the rule of uniformity, and that the provision here complained of, considered as a means for collecting the tax, was appropriate, and plainly adapted to that end, and that such a means is not prohibited by the constitution or inconsistent with the letter and spirit of that instrument.

It has been said in the course of this opinion that this is a case of indirect taxation, being an excise tax, within the meaning of the words, "but all duties, imposts and excises shall be uniform throughout the United States." The income tax decision (Pollock v. Trust Co., 158 U. S. 617, 635, 637, 15 Sup. Ct. 920) went on the distinction between direct and indirect taxation. The chief justice, in delivering the opinion of the court, said:

"We have considered the act only in respect of the tax on income derived from real estate, and from invested personal property, and have not commented on so much of it as bears on gains or profits from business, privileges, or employments, in view of the instances in which taxation on business, privileges, or employments has assumed the guise of an excise tax and been sustained as such."

And again:

"We do not mean to say that an act laying by apportionment a direct tax on all real estate and personal property, or the income thereof, might not also lay excise taxes on business, privileges, employments, and vocations."

—Meaning, as I understand, that such taxes are to be deemed indirect; that is to say, not subject to the rule of apportionment, but only to that of uniformity.

The writ of habeas corpus is discharged, and the petitioner remanded to the custody of the marshal.